T.C. Summary Opinion 2013-4

UNITED STATES TAX COURT

SHERRY HUDZIK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9707-11S.                      Filed January 17, 2013.

<u>Frank Agostino</u>, <u>Lawrence M. Brody</u>, and <u>John J. Genova</u>, for petitioner.

<u>Jamie J. Song</u> and Tiffany Heineman (student), for respondent.

SUMMARY OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent

for any other case. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In a notice of deficiency dated January 26, 2011, respondent determined deficiencies in petitioner's Federal income tax of $19,027, $17,405, and $21,225 for tax years 2006, 2007, and 2008, respectively. Respondent also determined section 6662 accuracy-related penalties of $3,655.80, $3,481, and $4,245 for tax years 2006, 2007, and 2008, respectively. The issues for decision are: (1) whether petitioner may deduct losses from her rental real estate activities under the passive activity loss rules set forth in section 469, and (2) whether petitioner is liable for accuracy-related penalties under section 6662(a).

Background

Some of the facts are stipulated and are so found. The stipulation of facts and the exhibits attached thereto, as well as the supplemental stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in New Jersey when her petition was filed.

In 2006, 2007, and 2008, petitioner worked 1,650 hours each year as a full-time treaty manager for Swiss Reinsurance America Corp. (Swiss Re) in Armonk, New York. Petitioner commuted from her home in Watchung, New Jersey, to

Swiss Re's office in Armonk, New York.  The distance from her home to her office was approximately 64 miles.

Petitioner self-prepared the joint Federal income tax returns for tax years 2006, 2007, and 2008 using TurboTax.  During the years in issue petitioner and her husband owned two rental properties.  One of the properties was a four-family dwelling in Cranford, New Jersey (New Jersey property), and the other was a condominium in Clearwater Beach, Florida (Florida property).  Petitioner reported the rental property income and expenses on Schedules E, Supplemental Income and Loss, and deducted losses of $84,156, $60,842, and $69,149 for tax years 2006, 2007, and 2008, respectively, on the basis of her claim that she was a real estate professional pursuant to section 469(c)(7)(B).

Petitioner asserts that when she prepared the returns for the years at issue, she used the TurboTax interview process that presented certain criteria to her to determine whether she qualified for the status of real estate professional.  Petitioner did not file with any of the returns an election to aggregate the rental properties.[1]

---

[1]Petitioner alleges that she made the election by aggregating the rental properties on her Schedules E.  This Court has consistently held that aggregating rental properties on Schedule E is not a deemed election under the requirements of sec. 469(c)(7)(A).  Trask v. Commissioner, T.C. Memo. 2010-78 (citing Kosonen v. Commissioner, T.C. Memo. 2000-107) (aggregation of losses was not clear notice
(continued...)

To substantiate her claim that she was a real estate professional, petitioner introduced three logs reflecting the amount of time she purportedly spent on rental real estate activities during each of the years at issue. The logs do not indicate when they were prepared, and every activity listed on the logs is either "Craigslist/email/responses" or "Craigslist/email/responses/open house." The logs have a column in which petitioner identified the property and the activity performed. Some of the time entered on the logs is listed as spent on "Cranford/Florida," and does not break down how much of the time entered was spent on each property.

Petitioner contends that in 2006 she spent a total of 1,942.25 hours on real estate activities. Of those hours, petitioner contends that she worked 1,270.25 hours on real estate activities related to the Florida property and 660 hours related to the New Jersey property and the Florida property combined.[2]

_____

[1](...continued)
of election under sec. 469(c)(7)). Thus, if petitioner meets the requirements of sec. 469(c)(7) and is a real estate professional, the material participation standard in sec. 469(c)(1) must be met with respect to each separate interest in rental real estate. See sec. 469(c)(7)(A).

[2]The total reflected for the Florida property and the New Jersey property equals 1,930.25 hours. The remaining 12 hours reflected on the log represents time spent on real estate activities for properties other than the Florida property and New

(continued...)

For 2007 petitioner contends that she spent a total of 1,790 hours on real estate activities. Of those hours, petitioner contends that she worked 1,525 hours on real estate activities related to the Florida property and 265 hours related to the New Jersey property and the Florida property combined.

For 2008 petitioner contends that she spent a total of 1,680.75 hours on real estate activities. Of those hours, petitioner contends that she worked 1,511.25 hours on real estate activities related to the Florida property and 169.5 hours related to the New Jersey property and the Florida property combined.

Petitioner alleges that most of her real estate activity consisted of searching for prospective tenants for the New Jersey property and the Florida property on Craigslist. In addition to her Craigslist activity, petitioner asserts that her rental activity also included renting and managing the New Jersey property and the Florida property, paying bills, and doing whatever else was required by the State and the town. Petitioner did not specify any of these activities in the logs.

On January 26, 2011, respondent issued the deficiency notice to petitioner for tax years 2006, 2007, and 2008, disallowing the Schedule E rental real estate

---

[2](...continued)
Jersey property.

losses for each year and determining the deficiencies and accuracy-related penalties for those years.  Petitioner timely filed a petition with this Court.

Discussion

## I.  Burden of Proof

The Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Pursuant to section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements.  At the start of trial petitioner's counsel stated that they would ask the Court to shift the burden to respondent under section 7491(a) at the end of trial.  Petitioner's counsel did not ask the Court to shift the burden at the end of trial and did not otherwise allege that section 7491(a) applies, nor did petitioner establish her compliance with the substantiation and recordkeeping requirements.  See sec. 7491(a)(2)(A) and (B).  Petitioner, therefore, bears the burden of proof.  See Rule 142(a).

II.  Passive Activity Losses

Petitioner argues that all of the passive losses from rental real estate activities should be allowed as deductions because she was a real estate professional during the years at issue.  Section 469 generally disallows for the taxable year any passive activity loss.  Sec. 469(a).  A passive activity loss is the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity is any trade or business in which the taxpayer does not materially participate.  Sec. 469(c)(1).

Rental real estate activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates.  Sec. 469(c)(2).  However, the rental activities of a taxpayer who is a real estate professional pursuant to section 469(c)(7)(B) are not treated as per se passive activities.  Sec. 469(c)(7)(A)(i).  Instead, the rental activities are treated as a trade or business and are subject to the material participation requirements of section 469(c)(1).  Sec. 1.469-9(e)(1), Income Tax Regs.

A taxpayer qualifies as a real estate professional and is not engaged in a per se passive activity if:

(i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

(ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Sec. 469(c)(7)(B). In the case of a joint return, the same spouse must satisfy each requirement. Id.

The parties dispute whether petitioner qualified as a real estate professional. Accordingly, we focus on whether petitioner's participation in the rental activities meets the requirements of section 469(c)(7)(B).

Section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), sets forth the requirements necessary to establish the taxpayer's hours of participation as follows:

The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

This Court has acknowledged that these temporary regulations do not explicitly state what records a taxpayer needs to maintain, but we have consistently held that they do not allow a postevent "ballpark guesstimate". Fowler v. Commissioner, T.C. Memo. 2002-223; Goshorn v. Commissioner, T.C. Memo. 1993-578.

The evidence fails to establish that petitioner qualified as a real estate professional. During all of the years at issue petitioner had a full-time job at which she generally worked 1,650 hours per year. According to the logs of hours petitioner submitted, the total number of hours she spent working on the rental properties exceeded the hours worked at Swiss Re. The logs that petitioner provided, however, are suspect. Petitioner attempted to establish the hours she purportedly devoted to the rental properties with the logs and her testimony at trial. The logs list totals of 1,942.25 hours, 1,790 hours, and 1,680.75 hours that petitioner spent during taxable years 2006, 2007, and 2008, respectively, working on the rental properties. We consider the hours reflected in the logs implausible, given that petitioner already worked 1,650 hours per year at Swiss Re and would have had to spend almost all of her remaining time working on the rental properties. See, e.g., Pohoski v. Commissioner, T.C. Memo. 1998-17. Petitioner failed to provide any underlying documentary evidence to substantiate the hours reflected in the logs. Petitioner has not established that she performed more than one-half of her

personal services in real property trades or businesses in the years at issue. Because she did not qualify as a real estate professional under section 469(c)(7)(B)(i), we need not further consider whether she materially participated in the rental activities, either in total for purposes of section 469(c)(7)(B)(ii) or individually to avoid passive characterization as to each specific property. See sec. 469(c)(7)(B).

We note that section 469(i) provides an exception to the general rule that passive activity losses are disallowed. A taxpayer who "actively participated" in a rental real estate activity can deduct a maximum loss of $25,000 per year related to the activity. Sec. 469(i)(1) and (2). This exception is fully phased out, however, when adjusted gross income equals or exceeds $150,000. Sec. 469(i)(3)(A), (E). Petitioner reported adjusted gross income of $102,738, $156,336, and $178,827 on her 2006, 2007, and 2008 tax returns, respectively. Accordingly, petitioner cannot deduct any of the passive activity losses for 2007 and 2008 but may be entitled to deduct a portion of the 2006 losses pursuant to section 469(i)(1). Any deduction, however, may be limited by the phaseout calculation under section 469(i)(3)(A).

III. Penalties

Respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) and (b)(2) for a substantial understatement of income tax with respect to each year in issue.

Section 6662(a) and (b)(2) imposes a penalty equal to 20% of the amount of any underpayment that is due to a substantial understatement of income tax. An individual substantially understates his or her income tax when the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Respondent has the burden of production with respect to the accuracy-related penalty. See sec. 7491(c).

Ten percent of the tax required to be shown on petitioner's returns was $2,076, $2,652.60, and $3,917.40 for tax years 2006, 2007, and 2008, respectively. Petitioner's understatements must therefore exceed $5,000 to be deemed substantial. Petitioner understated her 2006 tax by $19,027, her 2007 tax by $17,405, and her 2008 tax by $21,225. Therefore, respondent has met his burden of production.

The accuracy-related penalty is not imposed, however, with respect to any portion of an underpayment if the taxpayer can establish that he acted with reasonable cause and good faith. Sec. 6664(c)(1). The decision as to whether the

taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances indicating that a taxpayer acted with reasonable cause and in good faith include "an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id. Generally, the most important factor is the taxpayer's effort to assess the taxpayer's proper tax liability. Id.

Petitioner's counsel contended that petitioner acted with reasonable cause and in good faith by listing both properties on Schedules E, following the instructions on TurboTax, and reading and attempting to follow IRS publications. While section 469 and its regulations cover a highly complex area of the tax code, petitioner's recordkeeping seems to have greatly inflated the number of hours spent in the activity in order to satisfy the statute and the regulations. We conclude that petitioner did not act with reasonable cause and in good faith and that petitioner is liable for accuracy-related penalties under section 6662(a) for taxable years 2006, 2007, and 2008.

To reflect the foregoing,

Decision will be entered under

Rule 155.